IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES C. CASHNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 11-cv-1122-WDS-DGW |
| | ) |
| **PLANT MAINTENANCE SERVICES, LLC,** | ) |
| **a Limited Liability Company,** | ) |
| **HAROLD R. DUGAN, STEVEN C. DUGAN,** | ) |
| **ROBERT M. HARBISON, and ROBERT** | ) |
| **HALLER,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER**

Before the Court is Plant Maintenance Services' ("PM"), Harold R. Dugan's ("H. Dugan"), Steven C. Dugan's ("S. Dugan"), Robert Haller's ("Haller"), and Robert M. Harbison's ("Harbison") (referred to collectively as the "defendants")[1] motion to dismiss (Doc. 18), to which plaintiff filed a memorandum in opposition (Doc. 23). Defendants seek dismissal of plaintiff's complaint (Doc. 2) pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19.

**BACKGROUND**

Plaintiff Charles C. Cashner ("Plaintiff") filed a three-count complaint against defendants seeking one of the following three remedies: (1) to force S. Dugan to pay the money owed to plaintiff in accordance with their contract; or (2) have PM liquidated to distribute its net assets to its members, including Plaintiff; or (3) have this Court declare that Plaintiff retains a 9.5% interest in PM.

---

[1] The Court granted PM's motion to join its co-defendants' motion to dismiss on March 5, 2012 (Doc. 22).

1

Plaintiff asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §1332(a)(1). Plaintiff alleges, and the defendants do not dispute, the facts which establish diversity. Cashner is a citizen of Missouri and asserts a claim for relief of $740,000. PM is an Illinois limited liability corporation with its principle place of business in Illinois (Doc. 2). "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. . . ." 28 U.S.C.A. § 1332(c)(1). PM is, therefore, a citizen of Illinois. The remaining defendants are citizens of Illinois. (Doc. 2).

According to PM's Operating Agreement, Plaintiff was a 10% shareholder (Doc. 2-1). The shareholders then granted Haller a 5% portion, sold to him from all of the members' shares, reducing the stake of all shareholders, including Plaintiff (Doc. 2-2). Plaintiff's total stake in the venture became 9.5%. Plaintiff then allegedly sold his 9.5% share in PM to S. Dugan for $520,000 via signed contract. Subsequent to this transaction, S. Dugan failed to pay Plaintiff for purchase of Plaintiff's interest, and the other shareholders refused to recognize Plaintiff's 9.5% interest in PM.

As a result, plaintiff brought the present case. In Count I, Plaintiff alleges breach of contract against S. Dugan for failure to pay plaintiff $520,000 and cancel a 2007 promissory note with a face value of $220,000 in exchange for Plaintiff's 9.5% interest in PM in accordance with an Assignment of his interest which was consented to by PM's members/managers. Plaintiff seeks judgment against S. Dugan in the amount of $740,000, plus prejudgment interest from December 31, 2009. Alternatively, Plaintiff alleges in Count II that the members/managers of

PM are aware that S.Dugan never paid Plaintiff for his 9.5% interest, but refuse to recognize Plaintiff's interest and that distributions have been made without recognition of Plaintiff's interest. Plaintiff asks the Court to appoint a Receiver and/or dissolve and liquidate the assets of PM, wind up its affairs, direct the payments of its liabilities, and to distribute its net assets and distributions to its members, including Plaintiff for his fees and expenses to pursue this action. Alternatively, in Count III, Plaintiff asks the Court to declare that the Assignment dated December 31, 2009, is void because S. Dugan has refused to pay in accordance with the assignment, and to declare that Plaintiff retains his 9.5% minority interest and his status as a member/manager of PM under the terms of the original Operating Agreement, as amended. Plaintiff seeks a declaratory judgment stating the same.

## I.    Missouri State Court Litigation

The complexity of the case increases upon consideration of plaintiff's involvement in two ongoing state lawsuits, as well as this federal action. Prior to Plaintiff's filing a complaint in this Court, Douglas C. Draper ("Draper") and his company, Carlyle Investment Company, LLC ("CIC") sued Plaintiff, S. Dugan, and PM in Missouri state court for collection of debts owed. (*Draper and Carlyle Investment Group, LLC v. Cashner, LLC, and Charles C. Cashner*, Case No. 10JE-CC00923, 23rd Judicial Circuit, Division 6, Jefferson County, Missouri). It is undisputed that Draper and CIC are both Missouri citizens. Defendants assert that joinder of Draper and CIC is required because, in the Missouri state case, both claim an interest in the subject of this action, particularly, a security interest in Plaintiff's 9.5% membership interest in PM. Without joinder of Draper and CIC, defendants assert, S. Dugan, and the other individual defendants will be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. According to defendants, S. Dugan may be liable to Plaintiff as a result

3

of the alleged contract he entered into with Plaintiff for the purchase of his membership interest in PM, even though that interest may be subject to the prior, conflicting security interest claimed by Draper and CIC.  Defendants claim that PM may be forced to recognize Plaintiff's interest in PM even after Draper and CIC have acquired that interest through foreclosure, and that the other individual defendants risk dissolution of PM even though Draper's and CIC's conflicting claim to Plaintiff's interest in PM may deprive Plaintiff of any right to compel dissolution.

Defendants also assert that Plaintiff is able to obtain complete relief in the action between Draper and CIC, PM, and Plaintiff in the Missouri court.  Notably, as of the date of Plaintiff's response to defendants' motion to dismiss, however, PM, S. Dugan, and Speed Lube, LLC, were dismissed from the Missouri case, and the action now consists only of Draper and CIC as plaintiffs, and Plaintiff and his company, Cashner, LLC, as defendants.  Draper and CIC claim Plaintiff owes over $3,500,000.00 and seek, among other things, to foreclose their alleged security interest in the Plaintiff's PM and Speed Lube interest.  Plaintiff denies liability to Draper and CIC, claiming that they never acquired a valid security interest in the PM interest or the Speed Lube Interest.

    II.    <u>Illinois State Court Litigation</u>

Litigation is also ongoing in Bond County, Illinois, in which Plaintiff sued S. Dugan, Draper, Harbison, and Speed Lube, claiming that his agreement to sell the PM interest to S. Dugan was part of an agreement with Draper in which Plaintiff agreed to sell the Speed Lube interest to Draper.  (*Charles C. Cashner v. Speed Lube, LLC, Douglas Draper, Steven C. Dugan, and Robert M. Harbison*, No. 2011-L-13, 3rd Judicial Circuit, Bond County, Illinois).  In that case, Plaintiff seeks a declaratory judgment that he is the owner of the Speed Lube interest and is entitled to dissolve Speed Lube.

Plaintiff asserts that the only connection between this suit and the Missouri and Illinois state court actions is a common claim by Draper and CIC that plaintiff pledged his 9.5% minority interest in PM and Speed Lube, LLC to secure several loans. (Doc. 19 at 4). Plaintiff further asserts that the outcome of the case before this Court does not directly impact Draper's and CIC's claims in the two state court actions, and confirmation of Plaintiff's interest in PM may in fact strengthen Draper's and CIC's claims to secure the note obligations if each is successful in the Missouri case. Finally, plaintiff claims that because neither Draper nor CIC are members or managers of PM, neither is a necessary or indispensable party to this action.

In their motion to dismiss, defendants advance two arguments: (1) Draper's and CIC's security interests in PM make them indispensable parties, their joinder would defeat diversity jurisdiction, and the suit should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19; and, alternatively, (2) the Court should abstain from adjudicating Plaintiff's claims to avoid duplicative litigation in state court.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal for failure to join a party under Rule 19. For purposes of this motion, the Court accepts as true the allegations in the complaint. *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001).

"The purpose of Rule 19 under the Federal Rules of Civil Procedure is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Id*. at 481 (internal quotation omitted). If the joinder of a party will deprive the plaintiff of proceeding in federal court, however, courts are reluctant to dismiss a case for failure to join. *Id*. "Dismissal . . . is not the preferred outcome under the Rules." *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 634 (7th Cir. 2009).

The Seventh Circuit has recognized a two-step inquiry for joinder pursuant to Rule 19:

> First, the court must determine whether a party is one that should be joined if feasible--called, in the old days, a "necessary" party. Fed. R. Civ. P. 19(a); *Hall*, 100 F.3d at 478. . . . Only if the court concludes . . . that the party should be included in the action but it cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence. See Fed. R. Civ. P. 19(b). If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as "indispensable" and the action is subject to dismissal upon a proper motion under Federal Rule of Civil Procedure 12(b)(7).

*Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999).

"In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence." *Davis*, 268 F.3d at 480 n.4.

## ANALYSIS

**I.   Rule 19**

A.  Rule 19(a)

"Rule 19(a)(1) defines who is a 'required party.'" *Askew*, 568 F.3d at 635. To determine whether the party is necessary under Rule 19(a), the Court must consider: "(1) whether complete relief can be accorded without joinder, (2) whether [the potential party's] ability to protect his interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless he is joined." *Davis*, 268 F.3d at 481.

"If, as in the present case, joinder of an absent party would destroy diversity jurisdiction, 19(a) is inapplicable." *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 452 (7th Cir. 1977); *accord Bonnet v. Trustees of Schools of Township 41 North*, 563 F.2d 831, 833 (7th Cir. 1977). Rule 19(a)(1) defines "required party," however, and the Court must, therefore, consider whether Draper or CIC meet the definition before proceeding to 19(b).

Under Rule 19(a)(1), neither Draper nor CIC are required to participate in this case for the Court to afford complete relief to the parties before it. The Seventh Circuit has noted:

> while it is true that a contracting party is the paradigm of an indispensable party, when a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract.

*Davis*, 268 F.3d at 484 (internal quotations and citations omitted). Furthermore, "the term 'complete relief' refers only to 'relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Id*. (*quoting Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992)).

The agreement at issue was made strictly between Plaintiff and S.Dugan, with the approval of the other individual defendants. Defendants' assertion that Draper or CIC may have a superior security interest in the exact 9.5% interest at issue in this case would not prevent the Court from granting relief. The defendants have presented no reason why they cannot raise this issue as a defense, present relevant evidence of Plaintiff's agreement with Draper and CIC, depose Draper, and obtain any relevant documentation to support their claim. "The assertion of affirmative defenses which may turn upon, and even require adjudication of, the actions or rights of non-parties does not require joinder of those parties." *EquiMed, Inc. v. Genstler*, 170 F.R.D. 175, 179 (D.Kan. 1996). The presence of Draper or CIC is, therefore, not necessary for this Court to go forward, and complete relief between the existing parties can occur without joinder of Draper and CIC.

Regarding Draper's and CIC's ability to protect their own interests, Draper and CIC have sued plaintiff and Cashner, LLC in Missouri, and seek to protect their interests in that court. Draper and CIC have not attempted to intervene in this suit to protect any interests each might

have, nor have defendants produced an affidavit from Draper or CIC explaining how their interests may be affected by this lawsuit. *See Mamacita, Inc. v. Colborne Acquisition Co., LLC.*, No. 10 C 6861, 2011 WL 881654, at *8 (N.D.Ill. March 11, 2011). Furthermore, Draper and CIC were not parties to the agreement at issue here, nor does either have rights or obligations under this particular agreement.

  Finally, defendants claimed risk of multiple obligations has been diminished by their recent dismissal with prejudice from Draper's and CIC's case in the Missouri court. Furthermore, the case in Illinois is based upon Plaintiff's 9.5% interest in a company called Speed Lube, LLC, and although some of the defendants here are also defendants in that case, that cause of action revolves around a separate company, a separate agreement, and a separate interest.[2]

  The risk of inconsistent obligations, however, raises a murky issue. Defendants assert that if the Missouri state court upholds Draper's and CIC's claim that each is entitled to the same interest Plaintiff attempts to protect here, inconsistent results may follow. Defendants claim that if the Missouri court decides that Draper and CIC have valid security interests, plaintiff here would no longer have the right to seek payment for that same interest, nor would he have the right to request dissolution of PM or seek declaratory judgment that he is still a member of PM as a 9.5% interest holder. It is not at all clear, nor will this Court speculate as to how the cases may play out, and, therefore, whether any of the parties may actually incur inconsistent obligations. As a result of this issue, the Court will treat Draper and CIC as required parties. In light of the fact that the joinder of Draper and CIC is not feasible because it would destroy the

---

[2] Even though the Illinois litigation involves Cashner as a plaintiff and Draper, S.Dugan, and Harbison, as defendants, the subject matter and relevant agreement are different, thereby minimizing or eliminating the possibility that a judgment in this case would conflict with a judgment in the Illinois case. Nor could it subject the parties to duplicative litigation or liability.

Court's subject matter jurisdiction, the Court must consider whether, under Rule 19(b), the case can proceed or must be dismissed for lack of subject matter jurisdiction.

### B.  Rule 19(b)

Under Rule 19(b), the Court must consider whether:

in equity and good conscience the action shall proceed among the parties before it or whether the absent party is indispensable requiring dismissal of the action.  The rule lists four factors which must be weighed in making this judgment: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which such prejudice can be avoided by the shaping of relief; (3) the adequacy of the judgment in the absence of the person; and (4) the availability of an adequate remedy for the plaintiff if the action is dismissed from non-joinder.  Generally, Rule 19 entails a pragmatic approach, focusing on realistic analysis of the facts of each case.  In making this pragmatic determination, the district court should state the facts and reasons upon which it acts.

*Bio-Analytical*, 565 F.2d at 452 (internal quotations and citations omitted).

A judgment rendered in this case in Draper's and CIC's absence would not be prejudicial to Draper or CIC, or the other defendants, but the relevant issue is one of timing.  The Court concludes that it can provide particular relief to avoid potential prejudice to the defendants.  As stated above, the defendants can raise certain defenses in this case, but it appears that those defenses may depend upon the outcome of the pending litigation in Missouri.  Upon review of the record, the Court notes that the Missouri case was filed before this federal case, and that the Missouri case revolves around agreements which are subject to Missouri state law and which were entered into by Plaintiff *before* he entered into the agreement at issue in this case, and that the relevant agreements refer to the same 9.5% interest in PM.  The Court is also mindful, however, under 19(b), that the plaintiff would have no other recourse against these defendants if this case were simply dismissed, and that dismissal is not favored.  In light of this, the Court **STAYS** this cause of action until the Missouri litigation has concluded.  This way, defendants

will have the benefit of finality of that case to raise any potential defenses they wish, and will not be subject to inconsistent results from parallel proceedings.  At the same time, plaintiff retains his ability to receive an adequate remedy for his particular claims against these particular defendants, which he would not have should this case be dismissed for non-joinder.

## II.     Abstention

To the extent that defendants argue that this Court should abstain because of the pending state court cases, they have not shown:

> how any of the traditional theories of abstention apply to this litigation.  This case presents neither a federal question which might be mooted by a state court determination of state law, or a difficult question of state law bearing on an issue of public policy, or the request to restrain criminal or civil proceedings in favor of the exercise of federal jurisdiction.

*Bonnet*, 563 F.2d at 834 (internal citations omitted).  Furthermore:

> [i]n *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court reaffirmed that abstention is the exception, not the rule, and it applies only in limited circumstances. *Id*. at 813-20, 96 S.Ct. 1236. We have understood that the existence of a parallel proceeding- *i.e.* an overlapping case in a state court-is a requirement for exercising "*Colorado River* abstention." See *Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir.2009). That branch of abstention doctrine is invoked when, in the interest of wise judicial administration, it is desirable for one court to yield to another. See *Doctor's Assocs.*, *supra*, 375 F.3d at 622.

*Medical Assur. Co., v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010).  In light of the Court's conclusions above, abstention is not appropriate here.

## CONCLUSION

Accordingly, the Court **DENIES** defendants' motion to dismiss (Doc. 18) on all grounds raised.  This cause of action is **STAYED** pending the resolution of the litigation in Missouri.  The parties are **DIRECTED** to file a status report six months from the date of this Order.  The

parties are further **DIRECTED** to immediately notify the Court of the conclusion of either of the pending state actions in the Missouri and Illinois state courts.

**IT IS SO ORDERED.**

**DATE:  September 28, 2012**

                                          **/s/  WILLIAM D. STIEHL**
                                          **DISTRICT JUDGE**